UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF CANTON,<br><br>    Plaintiff,<br><br>v.<br><br>SELECT ENERGY, INC.,<br><br>    Defendant. | C.A. |

MAGISTRATE JUDGE Cohen

RECEIPT #
AMOUNT $ 150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

## NOTICE OF REMOVAL

Defendant Select Energy, Inc. ("Select"), pursuant to 28 U.S.C. §§ 1441 and 1446, files this Notice of Removal of the above captioned action from the Massachusetts Superior Court, Norfolk County, where it is denominated as Civil Action No. 04-00896, to the United States District Court for the District of Massachusetts. As grounds for this removal, Select states as follows:

1. On or about May 28, 2004, Plaintiff Town of Canton (the "Town") commenced an action against Select in the Superior Court of Massachusetts.

2. On or about June 1, 2004, the Town sent to Select a Summons and a copy of the Complaint by the Town in this action. True and accurate copies of the Summons and Complaint sent to Select are attached hereto as Exhibits 1 and 2, respectively.

3. In its Complaint, the Town alleges that it has suffered damages allegedly caused by Select's purported breach of an energy supply contract between Select and the Town.

4. The Town has set forth claims for breach of contract (Count I), and violations of Massachusetts General Laws ch. 93A (Counts II and III).

BOS1390527.1

5. In its Complaint, the Town alleges that it "is a municipal entity duly organized under the laws of the Commonwealth of Massachusetts" and is located in Norfolk County, Massachusetts.

6. Select is, and at the time this action was commenced was, a Connecticut corporation with a principal place of business in Berlin, Connecticut.

7. Without admitting, and expressly denying the validity of the Town's causes of action, the amount in controversy in this action exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. In its Complaint, the Town claims damages of $272,478.00. See Exhibit 2 ¶ 73.

8. Accordingly, this action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332 due to the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.00. This action can be removed to the District Court pursuant to 28 U.S.C. § 1441 (a) and (b). This court has original jurisdiction over this civil action for the following reasons:

    (a) In its Complaint, the Town states that it is a municipal entity organized under the laws of the Commonwealth of Massachusetts.

    (b) Defendant Select is a corporation organized under the laws of the State of Connecticut, with its principal place of business located at 107 Selden Street, Berlin, Connecticut.

    (c) The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. The Complaint states that this action involves an energy supply contract that was allegedly breached and the Town seeks damages in excess of $272,000.00 against Select. The Town is also seeking

damages pursuant to Massachusetts General Laws ch. 93A, as well as treble damages, attorneys' fees, interest, and costs.

9. A copy of this Notice of Removal is being served on the Town by service upon its attorney of record and filed with the Superior Court Clerk in Norfolk County, Massachusetts, as required by 28 U.S.C. § 1446 (d).

10. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446 (b).

11. By this Notice of Removal, Select is not waiving, and expressly reserves, its rights to contest service of process, personal jurisdiction, and the sufficiency of the Complaint.

12. In accordance with Local Rule 81.1, Select will file with this Court attested copies of all records, proceedings and docket entries in the State Court.

WHEREFORE, Defendant Select Energy, Inc. respectfully requests that this case be removed from the Superior Court of Massachusetts to this Court and proceed in this Court as an action properly removed thereto.

SELECT ENERGY, INC.

By its attorneys,

Timothy W. Mungovan, BBO No. 600702
Jennifer A. Champlin, BBO No. 654726
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Dated: June 17, 2004

BOS1390527.1

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DEFENDANTS

FILED
CLERK'S OFFICE

(b) County of Residence of First Listed Plaintiff **Norfolk County, MA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed **Hartford, CT**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

DISTRICT OF MASS.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Paul R. DeRensis
Deutsch Williams Brooks DeRensis & Holland
99 Summer Street
Boston, MA 02110

Attorneys (If Known)
Timothy W. Mungovan, Jennifer A. Champlin
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  / ☐ 550 Civil Rights |  |  |  |
|  |  / ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Plaintiff alleges breach of energy supply contract against Defendant. This court has original jurisdiction under 28 U.S.C. § 1332 based on the diversity of the parties and the amount in controversy exceeding $75,000.00. This action can be removed to the District Court pursuant to 28 U.S.C. § 1441(a) and (b).

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ **272,478.00**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

None

DATE _____
SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Town of Canton v. Select Energy, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ☐ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ☐ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

    ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

    ☐ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

    ☐ V.   150, 152, 153.

    04 11383

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
    YES ☐  NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
    YES ☐  NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
    YES ☐  NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
    YES ☐  NO ☒

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)). (Town of Canton is the only party that resides in Massachusetts. Canton is located in Norfolk County in the Eastern Division.)
    YES ☒  NO ☐

    A. If yes, in which division do **all** of the non-governmental parties reside?
        Eastern Division ☒    Central Division ☐    Western Division ☐

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
    YES ☐  NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Timothy W. Mungovan, Nixon Peabody LLP__
ADDRESS __100 Summer Street, Boston, MA 02110__
TELEPHONE NO. __617-345-1000__

(Coversheetlocal.wpd - 10/17/02)

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.　　　　　　　　　　　　　　　　　　SUPERIOR COURT
　　　　　　　　　　　　　　　　　　　　　　　　　C.A. NO. _____

　　　　　　　　　　　　　　　　　　　　　　　　　04　　00896

TOWN OF CANTON,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　PLAINTIFF'S COMPLAINT AND
　　　　　　　　　　　　　　　　)　　JURY TRIAL DEMAND
SELECT ENERGY, INC.,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　)
　　　　　　　　　　　　　　　　)

## Introduction

The following Complaint is for breach of contract and for tortious behavior including but not limited to violations of G.L. c. 93A, §§1 et seq., engaged in by Select Energy, Inc. ("Select"), its agents, officers, managers and employees in reference to Select's contract with the Town of Canton (the "town" and/or "Canton"), for the provision of electricity.

## Jurisdiction

1.　Jurisdiction over the instant Complaint for unfair and deceptive business practices and breach of contract is properly in this Honorable Court pursuant to the provisions of G.L. c. 223A, §3 as Select, *inter alia*, directly or indirectly through its agents, transacts business in the Commonwealth of Massachusetts and contracts to supply services and/or things in the Commonwealth of Massachusetts and Select has caused tortious injury by its acts and/or omissions within the Commonwealth of Massachusetts. In addition, upon information and belief Select contracted with other municipal customers other than the Town of Canton and is still doing business under those contract within the Commonwealth of Massachusetts.

## Parties

2. The plaintiff, the Town of Canton (the "town" and/or "Canton") is a municipal entity duly organized under the laws of the Commonwealth of Massachusetts.

3. The defendant, Select Energy, Inc. ("Select"), has a principal place of business at 107 Selden Street, Berlin, Connecticut and was at the time of the contract in dispute doing business within the Commonwealth by virtue of its contract with the town.

## Facts

4. Select entered into and executed a five year contract with the town in November of 1998 which contractually obligated Select to provide the town with electricity, commencing in January of 1999.

5. The contract required, among other things, for Select to provide electrical service to all of the town's ninety nine separate department accounts; however, thirty eight of those town accounts were never actually served by Select, despite its contractual obligation to do so.

6. This failure was neither known nor was it discernible by the town due to Select's failure to properly bill the various town accounts and the fact that Select employed various unfair and deceptive business "accounting" practices in an attempt to absolve itself of its contractual obligations to the town.

7. Of the accounts actually served by Select, none of them were properly billed.

8. Pursuant to the agreement of the town and Select, the town departments which actually received electricity from Select were to be separately and individually billed because of the nature of municipal finance and the fiscal nature of each town department's financing and budget.

9. Select, however, breached this agreement.

10. In breach of its agreement with the town, Select, among other things, assigned a single account number to all of the town departments, failed to include the corresponding distribution account numbers in their bills, and posted cancellations and credits without assigning these to the applicable accounts, which resulted in all of the accounts being improperly "melded" into one account, thus making it literally impossible for the town departments to unravel and identify the proper account to associate with which bill for payment.

11. In addition, the initial bills from Select which were received in March, April and May of 1999 failed to contain any account numbers whatsoever, just a billing address, which failure resulted in an inability to identify which charge was for which account and what town departments were being billed for what amount

12. Select was notified of its billing errors and was again reminded of its responsibility to segregate the accounts by department and to bill the town departments separately.

13. No bills were issued by Select in June or July of 1999.

14. Select failed to issue any bills until August 31, 1999; while those bills did have account numbers, they were only partially separated by department.

15. In addition, the August 31, 1999 bill also contained numerous errors, including a re-conglomeration of amounts claimed to be owed without a designation of what department had incurred the charges allegedly made.

16. Despite the fact that Select (unlike the town) was aware of these mistakes in accounting and this billing error, as evinced by its Select's own internal memoranda, it issued the August 31, 1999 bill anyway.

17. Thereafter, no bills were issued by Select in September or December, 1999.

18. No explanations were provided to the town by Selects for Select's failure to properly issue correct bills for these months.

19. In February 2000 Select again made a unilateral determination to alter the terms of the contract by returning all of Select's town accounts back to the Local Distribution Company and instead proposed and agreed to provide the town with a payment of the difference between what the electricity actually cost the town and the price that the town would have to pay Select for the same electrical service if it, Select, fulfilled its contractual responsibilities and the town's accounts were current.

20. Select specifically informed the town that it, Select, would provide payment to the Local Distribution Company to be credited to the town accounts for the difference between the price charged by the Local Distribution Company for supply and the amount contracted for between Select and the town.

21. However, rather than reimbursing the town for the price differential on a monthly basis, Select unilaterally "opted" to make payment of the differential between the price charged by the Local Distribution Company for supply and the amount contracted for between Select on a six month basis and agreed to pay interest on the money owed based on the treasury rate of interest, up until the payment was made.

22. Select, however, never made a single payment of the cost difference to the town of Canton, or to the Local Distribution Company on behalf of the town, after the initial partial credits issued against some of the accounts through June 2000.

23. While the contract has a provision allowing Select to provide service directly from the Local Utility's applicable tariff, if Select elects to keep the Customer, who in this case is the town, on the Local Utility's tariff, Select was required to pay the town the difference

4

between the price under the Local Utility tariff and the price under the Agreement; this contractual provision does not allow Select to require that the customer pay any amount Select claims is due nor does it allow Select the unilateral right after switching the customer to switch them back nor does it allow Select to neglect to pay the amount it owes to the customer or to unilaterally apply amounts Select owes the town against any amount they claim is owed by the town.

24.     Select claimed that because, according to it, the town accounts were not paid in full, it would not forward any payment differential reimbursement checks, contrary not only to the terms within the contract to compensate the town for the price differential but also to Select's notification to the town of the "change" in the agreement.

25.     That Select acknowledges that it is contractually bound to remit the differential cost payments to the town is exemplified by the fact that it did in fact apply advance credits based upon projected usage to a small number of the town's accounts through June 30, 2000.

26.     This was apparently done, according to Select, on the June 2000 bills issued to the town, not all of which were received, and the notification and delivery of which is suspect, at best, as a thorough review of the town's Department of Public Works and Board of Selectmen files (to whom Select claims to have forwarded the suspect bills) indicates that neither of these departments has any record of having received these bills.

27.     Despite repeated requests and attempts to resolve these issues by the town, Select's fallacious billing practices continued.

28.     For example, Select forwarded a bill to the town's Recreation Department dated June 5, 2000 that showed a previous balance of owed of $19,921.08 and cancellations of $11,942.55.

5

29. However, the June 5, 2000 bill cannot be reconciled with the bill previously received from Select which indicated that the balance forward at that time was $10,057.67.

30. While that balance owed figure was apparently "adjusted" by Select, the amount "cancelled" also indicated $2,079.14, resulting, apparently but improperly and deceptively, in an appearance that the same amount was actually owed. It was not.

31. Select's own paperwork and review of the accounts indicated that Select had accounted for $11,942.55 in cancellations which were not properly credited to the June 5, 2000 billing.

32. In addition, also by way of illustration, Select improperly sent a bill directed to "Canton Town Hall" on July 12, 2000 which bill consisted, once again, in an amalgamated billing for all of the town schools, the town's Property Maintenance Department, the Public Works Department and the Police as well as the Fire Departments.

33. This amalgamated billing also included charges allegedly dating back to April 1999; however, by that time all of the town department budgets had been exhausted and closed as a new fiscal year had already begun.

34. Select once again (contrary to the agreement of the parties)"lumped" many of the town accounts back together into a single undecipherable and unmanageable "Town Hall" "bill" for which there was in reality no account.

35. Thereafter, the School Department, which was one of the lumped together accounts, then received a bill dated October 5, 2000 indicating an account credit of $1,277.03; this bill, however was erroneous.

36. A subsequent review of Select's files uncovered the fact that the schools actually owed Select $18,847.21, which credit was improperly "subsumed" by Select in the amalgamated and erroneous "Town Hall" bill and was never properly billed to the school department.

37. These "errors" in accounting were determined after the fact upon an examination and attempted reconciliation of Select's business records by an energy consultant's review on behalf of the town.

38. These "errors" were due to Select's own actions and failures over which the town had no control and about which the town repeatedly conferred with Select, apparently to no avail, despite assurances to the contrary by Select.

39. Subsequently, on or about October 5, 2000 and again on October 12, 2000, just prior to sending a "notice of termination", Select sent bills to the town indicating that $2,044.60 was "owed".

40. However, the "outstanding" amount that Select claimed was owed was once again for electricity allegedly provided during 1999 for which no department was properly identified and/or billed and about which no departmental budgets for 1999 were in existence as the fiscal year had already closed.

41. In that regard, Select's alleged "termination notice" failed to indicate what accounts Select claimed were allegedly in arrears or the amounts for each account that Select claimed was "outstanding".

42. Select was thereafter contacted by the town and information was again requested concerning the individual accounts that Select claimed were outstanding and the amount that it claimed was owed; this information was sought to insure that each department paid its share of any outstanding amount owed, if any.

43. At that time, and despite the fact that it recognized its contractual obligation to do so, Select still failed to pay the town thousands of dollars that it owed the town for the credits due.

44. It was not until several weeks later that Select finally responded to the town's request for billing information and departmental billing reconciliation.

45. On November 6, 2000 Select finally adjusted the amount that it claimed was overdue and provided the town with a breakout of the amounts "due" for each account.

46. However, once again Select's information was internally inconsistent within its own documents.

47. At that time, in its cover letter enclosing the purported departmental breakout Select claimed that the amount owed was $23,926.52; however, the amount that Select claimed it was owed within the breakout documents themselves was $23,680.52.

48. In addition, both of these inconsistent figures differed markedly from the earlier October 5, 2000 and October 12, 200 bills which indicated that $25,519.68 and then $25,421.68 was owed, respectively.

49. Instead of either resolving these discrepancies in accounting or reconciling these different claims, Select then sent the town a "Termination Notice", this time claiming that the amount owed was $23, 650.73, which is yet again another, different amount.

50. Select was then again contacted by the town about its billing practices; that communication specifically informed Select that any bills for electricity would be paid once Select determined that actual amount that it claimed it was owed.

51.  Thereafter and despite the fact that Select still had not resolved its erroneous billing practices, the town authorized a check to be paid to Select in the amount of $22,046.09 on December 28, 2000, which check receipt was acknowledged by Select on January 17, 2001.

52.  Thereafter, on January 21, 2001 Select issued a Statement canceling an erroneous duplicate charge previously billed to the town from April 2000; however, in that billing Select failed to acknowledge receipt of the $22,046.09 check from the town which payment, according to Select's own internal business documents, had already been posted to Select's account on January 17, 2001.

53.  In addition, that January 2001 billing issued to the town by Select reverted to one of the previous balance amount that Select claimed was "owed" and Select's claim of "outstanding" amounts allegedly owed by the town was again changed to $25,580.99, which amount is the sixth different figure that Select claimed was in arrears.

54.  There were no additional billings to explain any of this series of six different erroneous claims made by Select concerning the amount that it claimed was owed.

55.  Due to Select's actions the town was transitioned back to the Local Distribution Company for its supply of electricity, beginning with the bill issue date of June 2000.

56.  From that point forward, according to the contract and the agreement between Select and the town, Select was to remit to the town the difference between the contract price and the price the town was charged for electricity without the benefit of the negotiated contract price with Select.

57.  Select, in violation of the covenant of good faith and fair dealing, among other things, has taken the erroneous position that that the credits due to the town have no bearing on a reconciliation of the accounts.

58. Select has also taken the position, however incorrectly, that it has no duty or responsibility to render correct bills devoid of questionable and deceptive accounting practices which practices are not only unfair and inequitable (as well as a breach of the contract and good faith and fair dealing) they also rendered the status of those accounts as indecipherable to the town.

59. The total credits owed by Select on the town accounts for November, 2000 was $12,619.24, of which $1,029.85 Select paid; thus leaving a balance of $11,589.39 which Select owed to the town.

60. As of the time at which Select unilaterally breached its contract with the town, Canton had issued checks to Select in the aggregate amount of $184,845.41 against the billed amount (without any of the credits owed to the town accounted for) of $197,235.24.

61. The town, however, never owed Select $197,235.24; when corrected after the fact the billed amount was actually $192,066.45, thus leaving a balance of $7,221.04 allegedly owed, without any credits being applied to the accounts.

62. Taking into consideration the outstanding credits owed to the town by Select, it was Select rather than the town that was and is in arrears.

63. It is Select rather than the town that is in debt here; based upon Select's own records which were provided to the town after Select allegedly unilaterally "terminated" the contract and only after repeated requests by the town and time delays by Select.

64. These records indicate that Select owes the town approximately $4,368.35, without considering the interest that Select owes the town, without any consideration of the price differential between the price of electricity that the town contracted for with Select and the price that the town actually had to pay for the electricity due to Select's errors, actions and omissions

and assumes (without any actual proof of its claims by Select) a credit to Select for payment for usage for which Select never presented a bill.

## COUNT I
### (Breach of Contract)

65. The town repeats and reavers the allegations contained within paragraphs nos. 1-64 of the Complaint as if specifically set forth herein.

66. The foregoing acts by Select, its agents, officers, managers and employees, amount to a breach of its contract with the town.

WHEREFORE, The town demands judgment against Select in an amount to be determined, with costs.

## COUNT II
### (Violation of G.L. c. 93A for Unfair and Deceptive Business Practices due to Select's underlying Breach of Contract and "Accounting" Practices)

67. The town repeats and reavers the allegations contained within paragraphs nos. 1-66 of the Complaint as if specifically set forth herein.

68. Select's purported "excuse" for "terminating" its contractual agreement with and obligations to the town and its failure to remit to Canton the amount that it owes the town (pursuant not only to its contractual agreement but also its notification and confirmation that it would remit to the town the cost differential between what electricity should have cost the town versus what the electricity did in fact cost the town as a result of Select's breach of contract) and the various unfair and deceptive business accounting practices employed by Select as a subterfuge, excuse and rationale for its actions are clearly violative of the Consumer Protection Act, G.L. §93A.

69. By Select's own records it erroneously billed the town over $33,796.83.

11

70. However, rather than correct these billing and accounting errors Select chose instead to use its accounting practices in an attempt to absolve itself from its contractual obligations to the town for the provision of electricity at a rate which (in hindsight) turned out not to be so profitable for Select.

71. Select's unfair and deceptive business and accounting practices have caused the town to have to acquire electricity at a higher rate than contracted for and said damages amount to several hundred thousand dollars.

72. It is nearly impossible, due to Select's manipulation and deception in reference to the town accounts, to unravel the subterfuge in an effort to ascertain exactly the extent of the damages sustained by the town.

73. However, as Select is aware an expert energy consultant provided extensive evidence to the Department of Telecommunications and Energy in November 2002 on behalf of the town which evidence reasonably and accurately reflects an approximation of said damages equaling $272,478.00.

WHEREFORE, the town requests that this Honorable Court:

(a) enter judgment in favor of Plaintiff;

(b) award Plaintiff its costs, such other relief as the Court deems just and proper, its attorneys fees and double or treble damages against the defendant, pursuant to G.L. c. 93A.

### COUNT III
(Violation of G.L. c. 93A due to Select's Unfair and Deceptive Business Practices: Failure to Reasonably Settle Claim )

74. The town repeats and reavers the allegations contained within paragraphs nos. 1-73 of the Complaint as if specifically set forth herein.

75. Despite the fact that the information contained within the extensive evidence provided to the Department of Telecommunications and Energy in November 2002 on behalf of the town which evidence reasonably and accurately reflects an approximation of said damages equaling $272,478.00, has been in Select's possession for at least eighteen months Select has engaged in bad faith by, among other things, willfully failing to properly investigate this claim and in unreasonably delaying any offer of settlement and has not even attempted to resolve or otherwise to settle this dispute reasonably.

76. Select's failure to proffer a timely and reasonable settlement offer amounts to a separate and distinct unfair and deceptive practice cognizable under G.L. c. 93A.

WHEREFORE, the town requests that this Honorable Court:

(a) enter judgment in favor of Plaintiff;

(b) award Plaintiff its costs, such other relief as the Court deems just and proper, its attorneys fees and double or treble damages against the defendant, pursuant to G.L. c. 93A.

### JURY DEMAND

The town hereby demands a trial by jury for all of the claims made herein so triable.

Respectfully submitted,
The Town of Canton,
By its attorneys,

Paul R. DeRensis, BBO#121000
Kimberly M. Saillant, BBO#548775
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, Massachusetts 02110-1235
Tel: (617) 951-2300

13